**FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
\* JULY 17, 2024 \*
BROOKLYN OFFICE**

JPL/TJT:PJC
F. #2022R00128

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | I N D I C T M E N T |
| - against - | Cr. No. **24-CR-293**_____ |
| SHEU HONG TAM YIP, | (T. 18, U.S.C., §§ 371, 982(a)(1), 982(a)(7), 982(b)(1), 1347, 1349, 1956(a)(1)(B)(i), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p)) |
|    also known as "Suzanne," | |
|    also known as "Susan," and | |
| GUIXIANG YUE, | **Judge Carol Bagley Amon** |
|    also known as "Charlie," | **Magistrate Judge Robert M. Levy** |
|          Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    Medicaid and Medicare

      1.     Medicaid was a federal and state health care program that provided benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. The Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services, was responsible for overseeing Medicaid in participating states, including New York State. Individuals who received benefits under Medicaid were referred to as "recipients."

2. Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and as referenced in Title 18, United States Code, Section 1347, and Title 42, United States Code, Section 1320a-7b.

3. Medicaid was a health and long-term care coverage program jointly financed by states and the federal government pursuant to the Social Security Act of 1965. Each state established and administered its own Medicaid program and determined the type, amount, duration and scope of services covered within broad federal guidelines.

4. Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Service providers were authorized to submit claims to Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services. By submitting a claim, the provider certified, among other things, that the services were rendered to the patient and were medically necessary, and were not rendered as a result of kickbacks or bribes.

5. Medicaid in New York State ("New York Medicaid") was administered by the New York State Department of Health (the "New York DOH"). The New York DOH approved certain managed long term care ("MLTC") plans to provide managed care to New York Medicaid recipients with long-lasting health issues or disabilities. Each MLTC plan had its own network of health care providers. New York Medicaid managed care providers who were within an MLTC network did not bill Medicaid directly, but instead billed the MLTC plan for services provided to their recipients.

6. New York Medicaid MLTC services included "social adult day care" ("SADC") services, which were services provided pursuant to a structured program that offered

older adults with functional impairments socialization, supervision, personal care and nutrition services in a protective setting.

7. Medicare was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by CMS. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries." Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and as referenced in Title 18, United States Code, Section 1347, and Title 42, United States Code, Section 1320a-7b.

8. Medicare was divided into multiple parts. Medicare Part B covered outpatient hospital services and professional services provided by physicians and other providers, including physical therapists (individually, "Provider," and collectively, "Providers").

9. CMS assigned each Provider a unique national provider identifier ("NPI") number. A Provider used its assigned NPI number when submitting claims for reimbursement to Medicare.

10. A Provider was required to be enrolled with Medicare in order to submit claims. To enroll in Medicare, a Provider was required to enter into an agreement with CMS in which the Provider agreed to comply with all applicable statutory, regulatory and program requirements for reimbursement from Medicare. By signing the Medicare enrollment application, the Provider certified that the Provider understood that payment of a claim was conditioned on the claim and the underlying transaction complying with Medicare regulations, Medicare program instructions and federal law and on the Provider's compliance with all application conditions of participation in Medicare.

11. Providers were authorized to submit claims to Medicare only for services that were medically necessary and actually provided to the beneficiaries and were not induced by illegal kickbacks and bribes.

12. In order to receive payment for a service covered by Medicare, the Provider was required to submit a claim for payment electronically or in writing. The claim required the Provider to identify, among other information: the Provider submitting the claim; the Provider providing the service; the beneficiary; the services rendered; the diagnosis or nature of the illness or condition treated; and the date or dates of service.

13. Medicare, Medicaid and the MLTCs paid for claims only if the items or services were medically reasonable, medically necessary for the treatment or diagnosis of the patient's illness or injury, documented and actually provided as represented and not induced by illegal kickbacks and bribes.

II. <u>The Defendants and Relevant Entities and Individuals</u>

14. The defendant SHEU HONG TAM YIP, also known as "Suzanne" and "Susan," was an owner of Blue Sky Adult Day Care, Inc. ("Blue Sky"), Joyful Adult Day Care Inc. ("Joyful") and SMYL Care, Inc. ("SMYL").

15. The defendant GUIXIANG YUE, also known as "Charlie," was an owner of Blue Sky, Joyful, My Physical Therapy and Acupuncture P.L.L.C. ("My PT") and Good Care Acupuncture PC ("Good Care") and was an acupuncturist licensed by New York State. YUE was a signatory on a bank account ending in 1313 (the "x1313 Account") at Financial Institution-1, an entity the identity of which is known to the Grand Jury, and on a bank account ending in 9858 (the "x9858 Account") at Financial Institution-2, an entity the identity of which is known to the Grand Jury.

16. Co-Conspirator-1, an individual whose identity is known to the Grand Jury, was an owner of Blue Sky.

17. Co-Conspirator-2, an individual whose identity is known to the Grand Jury, was an employee of Blue Sky and My PT.

18. Co-Conspirator-3, an individual whose identity is known to the Grand Jury, was an employee of Blue Sky and My PT.

19. Co-Conspirator-4, an individual whose identity is known to the Grand Jury, was a physical therapist who was licensed by New York State who purported to treat patients at SMYL and My PT.

20. Individual-1, an individual whose identity is known to the Grand Jury, was a Medicare beneficiary and New York Medicaid recipient.

21. Blue Sky was registered as a New York Medicaid managed care provider and was a provider of SADC services for New York Medicaid MLTC plans located in Queens, New York. Blue Sky maintained a bank account ending in 4333 at Financial Institution-3 (the "x4333 Account"), an entity the identity of which is known to the Grand Jury. The defendant SHEU HONG TAM YIP was a signatory on the x4333 Account.

22. Joyful was registered as a New York Medicaid managed care provider located in Brooklyn, New York and was a provider of SADC services for New York Medicaid MLTC plans.

23. MLTC Plan-1, an entity the identity of which is known to the Grand Jury, was an MLTC that operated in New York. MLTC Plan-1 approved Individual-1 for SADC services. Blue Sky billed MLTC Plan-1 for SADC services purportedly provided to its members.

24. MLTC Plan-2, an entity the identity of which is known to the Grand Jury, was an MLTC that operated in New York. Blue Sky billed MLTC Plan-2 for SADC services purportedly provided to its members.

25. MLTC Plan-3, an entity the identity of which is known to the Grand Jury, was an MLTC that operated in New York. Blue Sky billed MLTC Plan-3 for SADC services purportedly provided to its members.

26. SMYL was a medical practice located in Brooklyn and Queens, New York.

27. My PT was a medical provider located in Brooklyn, New York.

28. Company-1, an entity the identity of which is known to the Grand Jury, was owned by Co-Conspirator-1.

29. Company-2, an entity the identity of which is known to the Grand Jury, was owned by the defendant SHEU HONG TAM YIP.

III. The Fraudulent Scheme

30. In or about and between January 2017 and November 2022, the defendants SHEU HONG TAM YIP and GUIXIANG YUE, together with others, executed a scheme whereby they (i) paid kickbacks and bribes in the form of cash and gift certificates to Medicare beneficiaries and Medicaid recipients; (ii) submitted and caused the submission of claims to Medicare and Medicaid plans for services that were not provided or were induced by the payment of illegal kickbacks and bribes; (iii) solicited and received kickbacks and bribes from medical providers in exchange for the referral of Medicare beneficiaries and Medicaid recipients; and (iv) referred Medicaid recipients and Medicare beneficiaries to medical providers in exchange for kickbacks and bribes.

31.     In furtherance of the scheme, and in or about and between August 2017 and November 2022, the defendant SHEU HONG TAM YIP, together with others, submitted and caused to be submitted false and fraudulent claims to New York Medicaid for SADC services that were purportedly provided to New York Medicaid recipients who had enrolled with Blue Sky to receive such services, but in fact were not provided as represented and were induced by the payment of illegal kickbacks and bribes.   YIP submitted and caused to be submitted the false and fraudulent claims to New York Medicaid, through MLTCs, for services purportedly provided to New York Medicaid recipients on particular dates.   In fact, the services often were not provided to the recipients at all, were not provided as billed, and/or were induced by the payment of illegal kickbacks and bribes.

32.     As part of the scheme, the defendants SHEU HONG TAM YIP and GUIXIANG YUE, together with others, agreed to pay and paid illegal kickbacks and bribes in the form of United States currency to New York Medicaid recipients, and submitted and caused the submission of false and fraudulent claims to New York Medicaid, through the MLTCs, for the recipients' purported visits to Blue Sky that were induced by the kickbacks and bribes.   At least some of the New York Medicaid recipients who received cash kickbacks did not actually visit Blue Sky on some or all of the dates of the visits that were billed, did not receive the services as Blue Sky represented to New York Medicaid and/or the MLTCs and were paid illegal cash kickbacks and bribes.

33.     In order to get Medicaid recipients to enroll in SADC services with Blue Sky, Co-Conspirator-1 wrote checks from bank accounts controlled by Co-Conspirator-1 and the defendant SHEU HONG TAM YIP to entities that converted the checks to cash, which YIP and

the defendant GUIXIANG YUE and their co-conspirators used to pay illegal kickbacks and bribes.

34. In or about and between August 2017 and December 2022, Blue Sky submitted false and fraudulent claims to MLTC plans in the amount of at least approximately $41 million and was paid at least approximately $21 million for fraudulent claims for services that were not provided, were not provided as billed and/or were induced by the payment of cash kickbacks and bribes.

35. In or about and between January 2017 and January 2019, the defendant SHEU HONG TAM YIP, in exchange for illegal kickbacks and bribes, referred Medicaid recipients and Medicare beneficiaries to providers at SMYL, including Co-Conspirator-4. In exchange, the providers, including Co-Conspirator-4, submitted and caused the submission of claims to Medicaid and Medicare.

36. In or about and between January 2017 and January 2019, the defendants SHEU HONG TAM YIP and GUIXIANG YUE paid and instructed others to pay illegal kickbacks and bribes in the form of gift certificates to Medicare beneficiaries and Medicaid recipients who were purportedly treated at SMYL.

37. In or about and between January 2018 and November 2022, the defendant SHEU HONG TAM YIP and Co-Conspirator-1 referred members of adult day cares which they owned, including Blue Sky, to SMYL and My PT, in exchange for illegal kickbacks and bribes from the defendant GUIXIANG YUE and others.

38. In or about and between January 2018 and November 2022, the defendants SHEU HONG TAM YIP and GUIXIANG YUE instructed Co-Conspirator-3 and others to pay illegal cash kickbacks and bribes to Medicare beneficiaries and Medicaid recipients who

purportedly received services at SMYL's Queens location and My PT, including but not limited to members of Blue Sky and other SADCs, including Individual-1.

39. In furtherance of the scheme, the defendant GUIXIANG YUE and Co-Conspirator-1 provided cash to Co-Conspirator-2, Co-Conspirator-3 and others that was used to pay illegal kickbacks and bribes to Medicare beneficiaries and Medicaid recipients who purportedly received services at SMYL and My PT, including Individual-1. At times, YUE concealed the true nature of these transactions by falsely indicating that they were for "transportation" fees.

40. In order to obtain cash for paying Medicare beneficiaries and Medicaid recipients illegal kickbacks and bribes, Co-Conspirator-1 and the defendant GUIXIANG YUE wrote and cashed checks from the business entities which received proceeds from the fraud.

41. The defendants SHEU HONG TAM YIP and GUIXIANG YUE engaged in financial transactions involving fraud proceeds from the scheme that were designed to conceal the nature, source and ownership of the proceeds.

COUNT ONE
(Conspiracy to Commit Health Care Fraud)

42. The allegations contained in paragraphs one through 41 are realleged and incorporated as if fully set forth in this paragraph.

43. In or about and between January 2017 and November 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SHEU HONG TAM YIP, also known as "Suzanne" and "Susan," together with others, did knowingly and willfully conspire to execute a scheme and artifice to defraud any health care benefit program as defined in Title 18, United States Code, Section 24(b), to wit: New York Medicaid, and to obtain, by means of one or more materially false and fraudulent pretenses,

representations and promises, money and property owned by, and under the custody and control of, New York Medicaid, in connection with the delivery of and payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNTS TWO AND THREE
(Health Care Fraud)

44. The allegations contained in paragraphs one through 41 are realleged and incorporated as if fully set forth in this paragraph.

45. In or about and between January 2017 and November 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SHEU HONG TAM YIP, also known as "Suzanne" and "Susan," together with others, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud any health care benefit program as defined in Title 18, United States Code, Section 24(b), to wit: New York Medicaid, and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, New York Medicaid, in connection with the delivery of and payment for health care benefits, items and services.

46. On or about the dates specified below, within the Eastern District of New York and elsewhere, the defendant SHEU HONG TAM YIP, together with others, did submit and cause to be submitted the following false and fraudulent claims to MLTC Plan-1, in an attempt to execute, and in execution of, the scheme described above:

11

| Count | New York Medicaid Recipient | Approximate Date of Claim | Approximate Amount Billed to MLTC Plan-1 |
|---|---|---|---|
| TWO | Individual-1 | February 8, 2022 | $100 |
| THREE | Individual-1 | March 3, 2022 | $100 |

(Title 18, United States Code, Sections 1347, 2 and 3551 et seq.)

COUNT FOUR
(Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks)

47.     The allegations contained in paragraphs one through 41 are realleged and incorporated as if fully set forth in this paragraph.

48.     In or about and between January 2017 and November 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SHEU HONG TAM YIP, also known as "Suzanne" and "Susan," and GUIXIANG YUE, also known as "Charlie," together with others, did knowingly and willfully conspire:

(a)     to defraud the United States, by impairing, impeding, obstructing and defeating through deceitful and dishonest means, the lawful government functions of CMS, an agency of the United States, in its administration of Medicare and New York Medicaid;

(b)     to solicit and receive any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring one or more individuals, to wit: Medicare beneficiaries and New York Medicaid recipients, to one or more persons for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, contrary to Title 42, United States Code, Section 1320a-7b(b)(1)(A);

(c)     to offer and pay any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to one or more persons to induce such person to refer one or more individuals, to wit: Medicare beneficiaries and New

York Medicaid recipients, for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A); and

(d) to offer and pay any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to one or more persons to induce such persons to purchase, lease, order and arrange for and recommend purchasing, leasing and ordering any good, facility, service and item for which payment may have been made in whole and in part under a Federal health care program, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(B).

49. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants SHEU HONG TAM YIP, also known as "Suzanne" and "Susan," and GUIXIANG YUE, also known as "Charlie," together with others, did commit and cause the commission of, among others, at least one of the following:

OVERT ACTS

(a) On or about July 16, 2019, YUE provided Co-Conspirator-3 with a check in the amount of $10,000 to facilitate the payment of illegal kickbacks and bribes.

(b) On or about August 15, 2019, YUE wrote a check in the amount of $20,800 and with the memo line "Transportation Fee" to facilitate the payment of illegal kickbacks and bribes.

(c) On or about August 20, 2019, YUE wrote a check in the amount of $20,000 and with the memo line "Transportation" to facilitate the payment of illegal kickbacks and bribes.

(d) On or about December 30, 2020, YIP signed an agreement between MLTC Plan-2 and Blue Sky for the provision of SADC services.

(e) On or about July 21, 2021, YIP signed an agreement between MLTC Plan-3 and Blue Sky for the provision of SADC services.

(f) On or about January 6, 2022, Co-Conspirator-2 and Co-Conspirator-3 provided United States currency in the amount of $770 to Individual-1 at YIP's direction.

(g) On or about February 8, 2022, YIP submitted and caused the submission of false claims to MLTC-1 for SADC services that were not provided to Invidual-1 during January 2022.

(h) On or about August 8, 2022, Co-Conspirator-2 and Co-Conspirator-3 provided United States currency in the amount of $1,000 to Individual-1 at YIP's direction.

(i) On or about October 12, 2022, Co-Conspirator-3 provided United States currency in the amount of $180 to Individual-1 at YIP's direction.

(j) On or about November 8, 2022, Co-Conspirator-2 and Co-Conspirator-3 provided United States currency in the amount of $1,000 to Individual-1 at YIP's direction.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNTS FIVE THROUGH TEN
(Money Laundering)

50. The allegations contained in paragraphs one through 41 are realleged and incorporated as if fully set forth in this paragraph.

51. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants SHEU HONG TAM YIP, also known as "Suzanne" and "Susan," and GUIXIANG YUE, also known as "Charlie," together with others, did knowingly and intentionally conduct, and attempt to conduct, a financial transaction in and affecting interstate commerce, which transactions in fact involved the proceeds of one or more specified unlawful activities, to wit: acts and activities constituting an offense involving a federal health care offense, in violation of Title 18, United States Code, Sections 371, 1347 and 1349, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and knowing that such transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of such specified unlawful activities:

| COUNT | Defendant | Approximate Date of Transaction | Description of Transaction |
|---|---|---|---|
| FIVE | YUE | August 15, 2019 | YUE issued check #1282 in the approximate amount of $20,800 from the x1313 Account with the memo line, "Transportation Fee." |
| SIX | YUE | August 20, 2019 | YUE issued check #1284 in the approximate amount of $20,000 from the x1313 Account with the memo line, "BK Transportation." |
| SEVEN | YUE | February 6, 2020 | YUE issued check #247 in the approximate amount of $22,000 from the x9858 Account to himself. |
| EIGHT | YIP | December 8, 2021 | YIP and Co-Conspirator-1 issued check #238 in the approximate amount of $20,000 from the x4333 Account to Company-1. |
| NINE | YIP | October 8, 2022 | YIP issued check #558 in the approximate amount of $13,000 from the x4333 Account to Company-1. |

| COUNT | Defendant | Approximate Date of Transaction | Description of Transaction |
|---|---|---|---|
| TEN | YIP | October 8, 2022 | YIP and Co-Conspirator-1 issued check #559 in the approximate amount of $11,539 from the x4333 Account to Company-2. |

(Title 18, United States Code, Sections 1956(a)(1)(B)(i), 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS ONE THROUGH FOUR

52. The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One through Four, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offenses.

53. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS FIVE THROUGH TEN

54. The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts Five through Ten, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

55. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;
(b) has been transferred or sold to, or deposited with, a third party;
(c) has been placed beyond the jurisdiction of the court;
(d) has been substantially diminished in value; or
(e) has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

/s/
_____
FOREPERSON

By Carolyn Pokorny, Assistant U.S. Attorney
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

Glenn S. Leon/PJC
_____
GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE